ODOM, Justice.
 

 Defendant offered and agreed to purchase from the plaintiff a lot 50 .by 150 feet, together with improvements thereon, which ■consisted of a store and an upper apartment, for a consideration of $6,100 cash. This offer was made on May 8,1933, and immediately accepted by plaintiff, the act of sale to bé passed before the defendant’s notary on or before thirty days from the date of the offer and acceptance. As per agreement, defendant deposited with the notary $610, or 10 per cent, of the price; this amount not to he considered as earnest money, but a part of the purchase price, “the parties reserving the right to demand specific performance.” The offer to purchase and its acceptance were reduced to writing,, the instrument containing the following clause: “In the event that title is not valid and can not in reasonable time and at reasonable expense be made valid this contract shall be null and void.”1
 

 Defendant refused to carry out his offer and agreement to purchase. This suit by plaintiff to compel specific performance of the contract followed on November 24, 1933. Plaintiff alleged that he was able and willing to deliver the property under good, valid, and merchantable title, but that defendant had refused to accept title and to pay the price' agreed upon. Plaintiff prayed for judgment ordering defendant to perform the obligations of his contract by accepting title and for judgment against him for $5,490 and decreeing plaintiff to be entitled to receive the cash deposit of $610, the two amounts making $6,100, stipulated as the purchase price.
 

 The defendant in answer admitted that he had agreed in writing to purchase the property at the price mentioned and that he had refused to do so because since he agreed to pui’chase he had discovered that one of the deeds which foi;ms a link in plaintiff’s chain of title contains the following building restrictions:
 

 “(1) The building line shall not be less than twenty feet back from and parallel with the froxxt line of said lot.
 

 
 *728
 
 “(2) .¿Not more than one residence building shall be erected on any one of the lots of ground herein conveyed and said buildings shall cost not less than six thousand dollars.
 

 “(3) No business establishment shall be erected on any of the lots herein conveyed.
 

 “(4) Neither the lot herein conveyed or the building erected thereon shall ever be sold or leased to any one except of the Caucasian race.”
 

 It is alleged in answer that said building restrictions still form a part of plaintiff’s title; that the building now on the property was put there in violation of those restrictions, in that it was built for and is used for commercial purposes and is not 20 feet from the property line; and that therefore “plaintiff can not deliver to respondent a good and merchantable title.”
 

 There was judgment in favor of defendant rejecting plaintiff’s demands at his costs, and further judgment for defendant and against plaintiff for $610 and interest from judicial demand and annulling the agreement entered into between him and plaintiff. The plaintiff appealed.
 

 Defendant grounds his refusal to carry out his offer and agreement to purchase the property upon the proposition that plaintiff’s title is not good, valid, and merchantable and is suggestive of litigation. If that be true, his defense is well founded. Bachino v. Coste, 35 La. Ann. 570; Beer v. Leonard, 40 La. Ann. 845, 847, 5 So. 257; James v. Meyer, 41 La. Ann. 1100, 7 So. 618; Praegner v. Kinnebrew & Ratcliff, 156 La. 132, 100 So. 247.
 

 Plaintiff’s title traces back through mesne conveyances to the Vivian Land Company, a corporation organized under the laws of this state. On April 21, 1920, that company sold the then unimproved lot here involved to the Security Building & Loan Association, and “as part of the consideration of this sale” the purchaser obligated itself and its assigns “to the following restrictions, reservations, covenants and agreements.” Then follow the restrictions copied herein above.
 

 On the same day the Security Building & Loan Association sold the property to Herbert I-C. Smith, but the deed contained no building or other restrictions. On November 22, 1921, Smith sold to a corporation styled Herbert K. Smith, Inc.; Herbert K. Smith, Inc., sold to Fred Mittelhausen on March 28, 1923; Mittelhausen sold to Louis H. Rabouin, Jr., on August 27, 1926; Rabouin sold to the Liberty Homestead on October 5, 1926; the Liberty Homestead sold back to Rabouin on May 9, 1927; Rabouin transferred it by dation en paiment to the Liberty Homestead on May 17,1933 ; and the Liberty Homestead sold to plaintiff on June 19, 1933.
 

 Subsequent to the deed made by the Vivian Land Company to Security Building & Loan Association on April 21, 1920, in which the restrictions, reservations, covenants, and conditions complained of appear, there have been nine conventional transfers of this property. But in none of the nine deeds were there any building restrictions, nor was there any reference made in them to the restrictions contained in the Vivian Land Company deed. So far as the record discloses, plaintiff had no knowledge of the 'restrictions in the Vivian Land Company deed until his attention was called to them by counsel for defendant after the agreement to sell and purchase was signed on May 8,1933. Thereafter,
 
 *730
 
 on July 27, the Vivian Land Company, duly authorized by resolution of its hoard of directors, appeared before a notary and declared that whereas it had on April 21, 1920, sold the said property to the Security Building & Loan Association and that “whereas through inadvertence said act of sale recited that said property was sold under certain restrictions as follows: (then follows a copy of the restrictions) and whereas it was not the intention of said corporation to include said restrictions in said act of sale, but to sell the same free from all restrictions, and whereas said property has been transferred through mesne conveyances to Mr. Louis H. Rabouin without mentioning said restrictions and said corporation has been requested to correct the error that was made in including said restrictions in the act of sale aforesaid and there is no reason why this should not be done * * * therefore in order to rectify the error aforesaid *
 
 *
 
 * said act dated April 21, 1920, is hereby corrected so as to contain the true intention of the parties to said sale hy eliminating therefrom the restrictions hereinabove more fully described.”
 

 This act of correction was duly registered in O O B 118, Fol. 13 of the Records of Jefferson Parish, where the property is located.
 

 Counsel for defendant say that this correction or attempt by the Vivian Land Company to remove the restrictions from the deed is ineffective because such covenants are not personal to the vendor, and they rely upon the rule, which prevails here and elsewhere, that: “Where the owner of a tract of land subdivides it and sells distinct parcels thereof to separate grantees, imposing restrictions upon its use pursuant to a general plan of development or improvement, such restrictions may be enforced by any grantee against any other grantee either upon the theory that there is a mutuality of covenant and consideration, or upon the ground that mutual equitable easements are granted.” 19 C. J. § 459, p. 394.
 

 This rule was recognized in the recent case of Hill v. Wm. P. Ross, Inc., 166 La. 581, 117 So. 725, 726, where the facts were that the Southern Land Company had purchased .a tract of land, subdivided it into lots, sold them, and in the deed to each lot sold, inserted the following clause: “Neither the present purchaser, nor his heirs or assigns, shall ever erect any building on said lots less than 60 feet thereof in frontage.”
 

 The suit in that case was brought by the owner of one of the lots of the subdivision to enjoin the owner of another lot, which was only 44 feet wide, from erecting any building thereon. The court maintained the injunction on the ground that the erection of a building on a lot only 44 feet wide would be a clear violation of the restrictions, saying: “In Queensborough Land Co. v. Cazeaux, 136 La. 724, 67 So. 641, L. R. A. 1916B, 1201, Ann. Cas. 1916D, 1248, it was held that such restrictions, in contracts between individuals, are not unlawful in this state; that they are not personal to the vendor but inure to the benefit of all other grantees under a general plan of development, and are covenants running with the land; that the remedy of the other grantees is by injunction to prevent a violation of the restrictions by any one of them.”
 

 This general rule has no application
 
 here
 
 (for the reason that, while it appears that the Vivian Land Company at one time owned a
 
 *732
 
 large tract of land of which the lot involved was a part, and that it subdivided the tract into lots and sold them, it is not shown that the lots were sold according to any general plan or scheme of development for residential purposes, nor is it shown that the deed to any other lot sold by that company in that subdivision contains similar or any other restrictions whatever.
 

 On the contrary, Mi', and Mrs. Mittelhausen, who own a lot adjacent to the one involved, and on which they built a residence in which they now reside, testified that the deed to their lot contained no such restrictions. Not only that, they said that while they at one time owned the lot involved, they did not know that there were any such restrictions in the deed from the Vivian Land Company to the Security Building & Loan Association, and that if there were such restrictions in the deeds to any of the other lots in that subdivision, they had never heard of them. They said further that the building on the lot involved, which violates the restrictions in the old deed, was erected after they built their residence and they did not then, and do not now, object to it, and so far as they know no one else does. These witnesses were called by plaintiff. They were the only property owners called. Their testimony supports the recitals contained in the corporation’s correction deed executed by the Vivian Land Company to the effect that the restrictions, reservations, etc., in its deed to the Security Building & Loan Association in 1920 were inserted through error and inadvertence.
 

 Defendant called no witnesses, introduced the deeds of none of the other lots of the subdivision — in fact, rested its case on the one deed containing the restrictions. If he had seriously thought that this and other lots of the subdivision were sold according to a general plan of development or improvement with restrictions which might be enforced by any interested person, evidence of this fact was available. Not only were the records at hand, but those who had purchased lots and improved them and who reside in that vicinity could have been consulted and called as witnesses.
 

 The lot involved is part of original lot B of the subdivision. Adjacent to it is lot A. The title of both lots traces back to the Vivian Land Company. There is a structure on lot A known as “Victory Inn,” which was not built for and never has been used as a residence.
 

 Plaintiff proved that there were no restrictions in the original deed to lot A, nor in the deed to any of the other lots, so far as the witnesses knew. The record discloses also that the original lot B of the subdivision was purchased by Fred Mittelhausen on March 28, 1923. The lot has a frontage of 50 feet on Metairie road and runs back between parallel lines 300 feet. Mittelhausen took immediate corporeal possession of the entire lot and built a residence and a garage on part of it. In 1926 he sold to Meyers that portion of the original lot which fronts on Metairie road, being the lot involved, and the title traces to this plaintiff through an unbroken chain of transfers. Mittelhausen having gone into possession more than ten years pri- or to the date on which this agreement to purchase and sell was entered into, under a deed translative of property, it follows thiff; plaintiff’s title is good, unless the restrictions referred to render it invalid, and under the
 
 *734
 
 circumstances related we must hold that they do not.
 

 For the reasons assigned the judgment appealed from is reversed, and it is now ordered that there be judgment in favor of plaintiff and against the defendant ordering the specific performance of the contract aforesaid and ordering the defendant to accept title to the property involved in accordance with the agreement entered into by him and plaintiff on May 8, 1933. It is further ordered that upon plaintiff’s tendering to defendant a deed to the said property valid in form, the defendant is adjudged and decreed the owner thereof and indebted to the plaintiff in the full sum of $6,100, and that there be judgment in favor of plaintiff and against defendant for $5,-490 and recognizing plaintiff as.entitled to receive the deposit of $610 made with the notary, with recognition of plaintiff’s vendor’s lien and privilege on said property to secure the payment of the full amount of the purchase price.
 

 Under the circumstances here involved, it is ordered that plaintiff pay all costs of these proceedings.