51 So.2d 157 (1951)
MUNSON
v.
BERDON et al.
No. 3357.
Court of Appeal of Louisiana, First Circuit.
March 15, 1951.
Ashton L. Stewart, Baton Rouge, for appellant.
*158 Scallan E. Walsh, Baton Rouge, for appellees.
ELLIS, Judge.
Plaintiff herein seeks an injunction prohibiting defendants Berdon and his contractor Gregory from erecting on property situated in Ogden Park, belonging to Berdon, a building to be used for commercial purposes on the ground that such a structure is prohibited by restrictions affecting Berdon's land.
Defendants filed exceptions of no cause or right of action and in the alternative a plea of prescription and with full reservation of all rights by virtue of said exceptions and plea, answered the rule nisi.
Evidence was taken on the exception of no right of action and the plea of prescription, and by stipulation of counsel the Court reserved its ruling on the exceptions and plea of prescription and it was agreed that the testimony taken on the exceptions and the plea should be considered on the merits so that any decision rendered therein would be final as to the District Court.
After hearing, the Lower Court with written reasons recalled the rule and dismissed plaintiff's suit at her cost. Writs were sought from the Supreme Court but refused on the ground that plaintiff had a remedy by appeal, and thereafter an appeal was taken to this Court.
The law governing this case is well settled by two late cases decided by our Supreme Court, Salerno v. De Lucca, 211 La. 659, 30 So.2d 678, and Alfortish v. Wagner, 200 La. 198, 7 So.2d 708, 711, and as the latter case is relied upon by both counsel but particularly by counsel for plaintiff, we will quote from that case as follows:
"Before considering the various contentions raised by the defendant, it is apt to observe that the jurisprudence of this State is well settled that stipulations in title deeds providing for building restrictions (such as the one contained in the defendant's title) are valid and enforcible where the restrictions have been inserted in pursuance of a general plan devised by the ancestor in title to maintain certain building standards and uniformity in the improvements. See Queensborough Land Co. v. Cazeaux, 136 La. 724, 67 So. 641, L.R.A.1916B, 1201, Ann.Cas.1916D, 1248; Hill v. Wm. P. Ross, Inc., 166 La. 581, 117 So. 725; Rabouin v. Dutry [Dutrey], 181 La. 725, 160 So. 393; and Ouachita Home Site & Realty Co. v. Collie, 189 La. 521, 179 So. 841. These cases further hold that restrictions of this sort are covenants running with the land; that they are inserted by the original vendor for the benefit of the contiguous landowners whose titles contain similar covenants and that injunction is the proper remedy by which violations of the covenants may be restrained."
"Counsel for the defendant, while conceding (as they must) the force of the foregoing authorities, maintain that they are inapplicable to the facts of this case. They contend, in substance, that, for building restrictions of this sort to be enforced, it must clearly appear that the original plan of development was feasiblethat is, that the lots sold under the plan are located in the same neighborhood and were contiguous to each other and further that the original vendor has actually carried out the general scheme by the insertion of reciprocal restrictive covenants in all the titles to the property sold under it. In addition, counsel declare that, even though the proof is sufficient to warrant the conclusion that the vendor inaugurated a general plan and inserted the covenants in the titles of the purchasers in conformity therewith, relief will nevertheless be denied in equity where it appears that the character of the property subjected to the restrictions has changed to such an extent that the enforcement of the covenants could not maintain the purpose for which the original plan was designed.
"We entertain little doubt as to the legal correctness of the contentions made by counsel for the defendant. However, we experience considerable difficulty in discerning that any of these propositions are sustained by the facts of this case. Let us see."
*159 The first question to be decided is whether a plan was ever adopted or placed in effect by the Ogden Realty Company, which owned the original tract and subdivided it according to maps introduced in evidence. In 1925 the Ogden Realty Company, Inc., laid out Ogden Park, a subdivision in the City of Baton Rouge consisting of ten squares and two half squares, with a total of 321 lots. These twelve squares are bounded by Government Street on the South, North Boulevard on the North, Lovers Lane on the East, and Ogden Drive on the West. Plaintiff's property is located on half of Lot 17 and half of Lot 15 in Square 9, while the defendant is the owner of Lots 5 and 6 of Square 8 which have a frontage of 80 feet on Government Street by approximately 160 feet on Oakwood Drive, and he also owns Lots 8 and 10 of Square 8 which front on Oakwood Drive, bounded on the south by defendant's Lots 5 and 6 and Lot 4 of Square 8. The boundary on the rear of Lots 10 and 8 is Lots 7 and 9 of Square 8. Plaintiff's property is located approximately 180 feet diagonally north across Oakwood Drive from Defendant's lots. Thereafter, in 1936, the half of Square A and half of Square B were subdivided, adding some fourteen lots to each square.
While some of the acts of sale of lots in the Ogden Park Subdivision have eight restrictions, some nine and some eleven, we are only concerned with whether the particular lot was restricted for residential purposes.
It is admitted that no separate instrument or declaration was recorded in East Baton Rouge Parish providing for the restrictions of lots in Ogden Park, and on the maps filed in the plat book there is no reference made to nor any restrictions shown on this map, and the only restrictions, if any, will be found in the individual sales. Accordingly, we must look to the latter to determine whether there was a general plan adopted for this subdivision.
It is also admitted and shown by the record that the Louisiana Realty Company, Inc. acquired by foreclosure sale, without restriction, 117½ lots from the Ogden Realty Company, Inc. It is shown that Louisiana Realty Company, Inc. placed some restrictions on seven of these lots, however, this is immaterial to a decision of the question now before us, because it is not contended that the Louisiana Realty Company, Inc. adopted any plans for the lots they obtained, and they are not a party to this suit. The only material fact is that the record fails to show any plan by the Ogden Realty Company, Inc. as to restrictions insofar as the 117½ lots are concerned. The Louisiana Realty Company, Inc. lots are scattered throughout the entire twelve squares of this subdivision. Therefore, we have these 117½ lots sold by Louisiana Realty Company, Inc. disbursed throughout the entire subdivision with no restrictions, some of them being next to a lot with restrictions.
Let us see what the Ogden Realty Company, Inc. did with respect to the property along Government Street and the lots in Squares 8 and 9 and 3 and 4.
Lot 3 of Square B sold by Ogden Realty Company, Inc. fronting on Government Street specifically allowed no residential or commercial building to be erected thereon at a cost of less than $3500.00. Lot 2, Square B, sold by Louisiana Realty Company, Inc. contains no restrictions. Lot 1 of Square B, sold by Louisiana Realty Company, Inc. contains no restrictions. Lots 28, 26 and 27, Square B contain no restrictions.
Square No. 6, which is bounded on the south by Government Street, is to the East of Square B and Bedford Drive and has five lots fronting on Government Street. Lot No. 1 of this square is semi-commercial, therefore unrestricted. Lots 2 and 7 of this square, while it had eight restrictions, commercial use was specifically granted, sold by Ogden Realty Company, Inc. Lot 3 of Square 6 allows a grocery store, sold by Ogden Realty Company, Inc. therefore no restrictions. Lot 4 of Square 6, sold by Ogden Realty Co., Inc., allowed a meat market or delicatessen shop. Lot 5 of Square 6, sold by Ogden Realty Company, Inc. was restricted to a dwelling. This is the corner lot which fronts on Government street with a depth of approximately 154 feet on Hearthstone Drive. *160 Lot 6, just to the rear of 3, 4 and 5, which has a frontage on Hearthstone, has no restrictions.
Lots 1 and 2 of Square 7, sold by Ogden Realty Company, Inc., have no restrictions. Lots 3 and 4, sold by Louisiana Realty Company, Inc. have no restrictions; Lot 5 of Square 7 was restricted by Ogden Realty Company, Inc.
Lots 1 and 2 of Square 8, sold by Ogden Realty Company, were restricted. Lots 3 and 4, sold by Louisiana Realty Company, Inc., were unrestricted. Lots 5 and 6 of Square 8, and Lots 8 and 10 of Square 8, owned by defendant, sold by Ogden Realty Co., Inc., restricted.
In Square 9, Lot 1 is restricted. Lot 2, sold by Louisiana Realty Company, Inc., no restrictions. Lots 3 and W½ of Lot 4 of Square 9, sold by Louisiana Realty Company, Inc., no restrictions. Lot 5 and E½ of Lot 4, Square 9, no restrictions. Lot 6 of Square 9, sold by Ogden Realty Company, Inc., restricted. Lot 10, Square 10, directly across the street from the last mentioned lot in Square 9, sold by Ogden Realty Company, Inc. is unrestricted.
The evidence shows that of the 29 lots now facing on Government Street, there are improvements on 20, and that 14 of these have commercial buildings located thereon, and one of the six lots on which are dwellings is being occupied and used as commercial building. The evidence further shows that of the 9 lots left that are presently unimproved, five, including the two lots immediately adjoining the property of the defendant, have no restrictions whatsoever.
Introduced in evidence are three photographs showing Government Street as it bounds Ogden Park to be predominantly commercial, and the testimony unquestionably establishes the fact that Government Street is now and will, in the future, be commercial. As evidence of this, by ordinance it is now zoned as commercial.
An overall picture as given by the record in this case shows that there was no definite plan adopted by the Ogden Realty Company, Inc. for they would sell one lot restricted, and the adjoining lot unrestricted without any apparent reason. The burden was on the Ogden Realty Company, Inc. to establish a definite plan in this subdivision, and if they lost the ownership of 117½ lots scattered throughout the entire subdivision which were sold without restrictions, then if they had a plan it was defeated by this sale. However, the sales made by the Ogden Realty Company, Inc., alone show that there was no definite plan to restrict an entire square or portion of a square for residential purposes, or to establish a commercial center. The evidence is convincing that Ogden Realty Company, Inc. had no plan.
While counsel for plaintiff does not absolutely concede that there was no general plan for this Park, he does practically concede that it was defeated generally throughout the subdivision by adjoining lots having different restrictions, some with restrictions and some without. He argues that the Alfortish v. Wagner case, supra, and the statement made by the Court therein on page 711 of 7 So.2d is full authority for his suit. The court said: "The first point raised by the defendant is that the New Orleans Housing Corporation was not justified in devising a general plan for the marketing of the lots owned by it, because those lots were scattered over a large territory and were not adjacent to each other. This contention might have some weight with respect to the few lots owned by the corporation in Squares Nos. 1306, 1307, 1229, 1230, 1152 and 1153. However, insofar as the lots comprising Square No. 1006 and those situated in Square No. 1007 facing on Desire Street are concerned, the proposition is not impressive. The lots in these squares are adjacent to each other and there was no good reason why the plan adopted by the Housing Corporation could not be fulfilled with respect to its property located in that vicinity. Accordingly, the restriction placed in the defendant's deed was one which inured to the benefit of all of the property (charged with like restrictions) *161 fronting on either side of Desire Street between North Johnson and North Galvez Streets."
He has taken the sixty lots in Squares 8, 9, 4 and 3, fronting on Oakwood Drive, and argues that these lots are contiguous and that the general plan of restrictions was carried out in this area.
In this area in Square 8 we have the corner Lot 6, belonging to defendant and fronting on Government Street and running back on Oakwood Drive, restricted. Lots 8, 10, 12 and a portion of 14, restricted. We have the north portion of Lot 14 and all of Lot 16, unrestricted. We have Lots 20 and 22, practically in the middle of this square, unrestricted. Lots 24, 26, 28, 30 and 32, restricted. Thus, we have 10½ lots restricted in this block, and 3½ lots unrestricted as of the date of the sales, and furthermore, those unrestricted are intermingled with those restricted.
In Square 3 there are 15 of the lots restricted, while Lot 14, sold by Ogden Realty Company, Inc., practically in the center of the block, is unrestricted.
According to Plaintiff's Exhibit 3, pages 123, 124 and 126, we find Lots 1, 3 and 5 of Square 4, sold by Ogden Realty Company, Inc. with no restrictions. In the next line, we find in Book 197, page 351 these same lots sold with restrictions. The rest of the lots fronting on Oakwood Drive in this Square were restricted. This is unexplained but does show lack of a definite plan.
In Square 9, we find Lot 31 restricted, the adjoining Lot 29 unrestricted; Lot 22, restricted; Lot 25, restricted; Lot 23, restricted; Lot 21, restricted; Lot 19, restricted; Lot 17, restricted; Lot 15, restricted; Lot 13, restricted; Lot 11, restricted; adjoining Lot 9, unrestricted; Lot 7, unrestricted, and Lot 1, which fronts on Government Street, unrestricted.
In ascertaining from the record the existence or non-existence of a definite plan with regard to the subdivision, it is immaterial whether residences were later built on these unrestricted lots. In order to arrive at the plan of the subdivision, we must take what we find on the date of the sale as contained in each act of sale. Even if we take this small restricted area of 60 lots out of approximately 350, it does not show a feasible plan. There was never any intention on the part of the Ogden Realty Company, Inc., at least that was carried out, to restrict these 60 lots for residential purposes only. In addition, it is proper to consider entire Squares 8, 3, 4 and 9. Lots 3 and 4 of Square 8, fronting on Government Street and adjoining defendant's Lots 5 and 6, are unrestricted. Lots 7 and 9 have no restrictions, They are directly to the rear of Lots 8 and 10 owned by defendant and facing on Beverly Drive. Lot 11 is unrestricted, yet Lot 12 fronting on Oakwood Drive, directly behind Lot 11, is restricted. Lot 13, which is opposite Lot 14 of Square 8, the latter being partially unrestricted, is restricted. The rest of the Lots fronting on Beverly Drive are restricted, yet to the rear of them, as has been shown, are unrestricted lots. Under such a plan certain people would have to build residences while to their side or the rear of their restricted lots the owners might build a commercial building. The same is true of Square 9. For example, Lot 1, fronting on Government Street is restricted; Lots 2, 3, 4 and 5 are unrestricted, while Lot 6 on the corner is restricted. Lots 7 and 9, as has been shown, fronting on Oakwood Drive in Square 9 are not restricted, yet right to their rear Lots 8 and 10 are restricted. As a further example, Lot 29 of Square 9 has no restrictions; the lot to its rear, Lot 30, has no restrictions, yet the lots adjoining each of these lots on the north and south, are restricted. A portion of Lot 26 of Square 9, fronting on Westmoreland Drive, was unrestricted, yet Lot 25 to its rear, fronting on Oakwood Drive, is restricted.
Taking the evidence in this case, there was no general plan proven, and there was no general plan to restrict Squares 8, 9, 3 and 4 for residential purposes only.
The Alfortish v. Wagner case, supra, is based entirely upon absolute proof of a general plan or scheme and held that even *162 though the plan might have been defeated in the greater portion of the subdivision, if they had adopted such a plan and had placed the restrictions in contiguous lots in accordance therewith, and the area was susceptible of being developed according to the plan, the restrictions could not be defeated. Such is not the case here.
In addition, we think the judgment of the District Court was correct as shown by the facts with regard to the change in the character of the property fronting on Government Street subject to the restrictions. Defendant should not be deprived of the use of his property for commercial purposes while adjoining owners may so use their property.
The principles governing the enforcement of restrictive covenants is set forth in Vol. 14 of American Jurisprudence, Section 338, as follows: "Equitable principles govern enforcement in equity. Whether or not a court of equity will specifically enforce restrictive covenants in conveyances of real estate is a matter for the exercise of sound equitable discretion in the light of attendant circumstances after, as well as before, the passage of a zoning ordinance. Whether injunctive relief will be granted to restrain the violation of building restrictions is a matter within the sound legal discretion of the chancellor, to be determined in the light of all the facts and circumstances. The complainant's right to insist on the covenants and to invoke the injunctive power of the court must be clear and satisfactory. The equitable enforcement of a restriction can be invoked only for the purpose of protecting the benefit which it was the object of the covenant to afford. If the restrictive covenant has ceased to have any beneficial value to the complainant's property, it can form no ground for equitable relief * * *."
Under the facts in this case, we are of the opinion that the restrictive covenant in defendant's deed has ceased to have any beneficial value to the complainant. Also, as stated in 26 C.J.S., Deeds, § 163, P. 515, "Restrictive covenants are to be construed most strictly against the grantor and persons seeking to enforce them, and liberally in favor of the grantee, all doubts being resolved in favor of a free use of property and against restrictions."
It is therefore ordered that the judgment of the District Court be affirmed.