McBRIDE, Judge.
Plaintiff owns Lot 13, Square 218, Airline Park North Subdivision, with the im- ' provements thereon designated as municipal No. 6405 Ruth Street, Metairie, La., in which petitioner makes his home; defendant is the owner of the adjoining Lot 12 of ■said Square 218 in said subdivision, the improvements thereon being designated as No. ■6401 Ruth Street, wherein he lives with his wife and family. Plaintiff sued defendant asserting that the latter was violating the restrictive covenants running with the titles to all lots in Square 218 and the other squares of said subdivision by using the buildings thereon for commercial purposes, and prayed that defendant be permanently enjoined from so using his property or from utilizing it in an offensive or noxious manner. The defendant answered contending that his activities do not constitute a commercial use of the premises and, alternatively, avers that the violations complained of have been conducted by defendant for more than two years and are, therefore, prescribed under R.S. 9 :5622, as amended. After a trial on the merits defendant was permanently enjoined from using his residence No. 6401 Ruth Street for commercial purposes by interviewing prospective sales personnel for his employer thereon or receiving and storing the employer’s merchandise within his garage area. Defendant appealed.
Since July 1962 defendant has been a field manager for a national and well known manufacturer of brushes whose products are sold and distributed through canvass by house-to-house salesmen.
For nine years prior to becoming field manager, defendant had been a salesman for said manufacturer and would receive from it at 6401 Ruth Street weekly truck deliveries of cardboard cartons containing samples of the employer’s products which he personally used in connection with his door-to-door canvass as a salesman.
After becoming field manager defendant’s occupational duties were different. He was required to employ door-to-door salesmen. His modus operandi was to advertise for salesmen from time to time in a local newspaper and then interview the applicants at his home. If it happened that defendant was not at home the prospective salesmen would wait for him in the automobile driveway on the premises. If an applicant qualified, he would return at another time to defendant’s home where he would be accepted for the job and furnished with samples of the wares he was to sell.
Weekly deliveries of sample cases, enclosed in cardboard cartons, were made by truck to defendant’s home and defendant would store the same in his garage until the issuance to new salesmen.
The two restrictions which defendant’s activities are said to violate provide as follows:
‘T. All lots of this Subdivision, known as AIRLINE PARK NORTH, shall be for residential purposes only, * * *
* * * * * *
“4. No noxious or offensive trade or activity shall be carried on upon any lot, nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood.”
The trial court was of the opinion that defendant’s activities conducted at 6401 Ruth Street prior to his becoming field manager were not violative of the provisions of the restrictions. However, the court did hold that the defendant violated restriction No. 1 in that, as field manager, his activities in connection with the employment of the salesmen and the storage and issuance to them of the samples, all of which took place on defendant’s premises, constituted a use thereof other than for residential purposes.
Counsel for appellant takes the position that none of defendant’s acts were violative of the restrictions and in the alternative contends that if there was a violation then *703 and in that event, under R.S. 9:5622, as . amended, such is prescribed by two years.
In Salerno v. De Lucca, 211 La. 659, 30 So.2d 678, the Supreme Court said:
“It is the well established jurisprudence of this state that where restrictions have been inserted in deeds in pursuance of a general plan devised by the ancestor in title to maintain certain building standards and uniform improvements, such as those here under consideration, they are valid and enforceable. Queensborough Land Co. v. Cazeaux, 136 La. 724, 67 So. 641, L.R.A.1916B, 1201, Ann.Cas.1916D, 1248; Hill v. Wm. P. Ross, Inc., 166 La. 581, 177 So. 725; Rabouin v. Dutrey, 181 La. 725, 160 So. 393; and Ouachita Home Site & Realty Co. v. Collie, 189 La. 521, 179 So. 841. These are real rights or covenants that run with the land for the benefit of land owners within the area and to prevent the violation of these restrictions injunction proceedings may be resorted to. See Collie and Queensborough cases, supra, and alson Edwards v. Wiseman, 198 La. 382, 3 So.2d 661.
With reference to restriction No. 1 providing that the lot “shall be for residential purposes only” what the Supreme Court of Florida said in Moore v. Stevens, 90 Fla. 879, 106 So. 901, 43 A.L.R. 1127, appears apropos here:
“The covenant under which appellee claims the right to injunctive relief is the one which provides that appellant’s property 'is to be used for residence purposes only.’ There is no ambiguity in the quoted expression, nor doubt as to its meaning, when considered in the light of the entire transaction in which it was used and its component words are accorded their ordinary, well-understood meaning. The word ‘residence’ is one of multiple meanings, but the context in which it is used in this instance clearly indicates its meaning to be a dwelling house where, a person lives in settled abode. The word, in this instance, relates solely to the use or mode of occupancy to which the property may be put. The word ‘only’ is a limiting term which qualifies the word with which it is grammatically connected. As here employed it is synonymous with the word ‘solely,’ or the equivalent of the phrase ‘and nothing else.’ It qualifies the phrase ‘to be used,’ with like effect as if the covenant had read that the property ‘is to be used only for residence purposes.’ When so employed and understood, it necessarily excludes all uses of the property other than for residence purposes, and the interposition of other negative terms specifically prohibiting the use of the property for business, mercantile, or other similar purposes are unnecessary.”
We do not see how it can be said that the actions of the defendant after his having become field manager in July 1962 can be construed other than as a putting of his lot to other than “residential purposes only”. We quite agree with the trial judge that prior to his status of field manager defendant’s complained of acts did not amount to a violation of restriction No. L At that time he was a salesman and the mere receipt at his home of the samples he was to display to prospective customers elsewhere did not amount to a prohibited use of the lot. To hold otherwise would be too narrow a construction of the restriction. After July 1962, however, defendant’s duties changed and so did his actions. He became the agent of the employer to engage the services of others to carry out the employer’s business, and in this pursuit he used his premises as the place where the necessary negotiations were carried on, and for the effecting of the hiring and the outfitting of the new employees with samples which he kept stored and in readiness on the premises. Thus, defendant, within the contemplation of restriction No. 1, was not using his lot “for residential purposes only.” The restriction of the use to residential purposes is in contradistinction to a “business” use such as existed.
*704 In view of the above, it is not necessary to determine whether restriction No. 4 was violated.
Plaintiff’s action to enjoin defendr ant from a continuation of the violation of the restriction is not prescribed by two years under R.S. 9:5622, as amended. As we have said the violation did not commence until July 1962. The instant suit was filed March 13, 1964, or within two years of the inception of the violation.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.