DOUCET, Judge.
This suit for declaratory relief was filed by Eugene Nepveaux and Catherine Nep-veaux against Linwood Realty Company, Inc. (hereafter Linwood) and Donald Fitzgerald, seeking to declare the construction of townhouses to be in violation of building restrictions in effect in the Linwood Subdivision West, Opelousas, Louisiana. The trial court held that the building restrictions did not regulate townhouses and denied declaratory relief. The plaintiffs have appealed the trial court’s judgment. We reverse.
On March 29, 1979, Eugene Nepveaux purchased Lot 12 in the Linwood Subdivision West, Opelousas, Louisiana. He was motivated to purchase this lot because he was presently residing in an area adjacent to commercial property and he viewed the restrictive covenants of the Linwood property and understood it was for single-family residential purposes only. Mr. Nepveaux commenced to build a home for his family on the lot purchased.
Several months later Mr. and Mrs. Robert Vige purchased two lots, 13 and 13A, adjoining Mr. Nepveaux’s property. These lots were subsequently sold to Mr. Donald Fitzgerald upon which he constructed twelve townhouses built in four-unit clusters. Each separate townhouse contained approximately 1,100 square feet and cost about $30,000.
At the time Mr. Nepveaux purchased his lot, certain building restrictions were in ef- *591 feet. His act of sale incorporated the restrictions by reference. The Vige’s act of sale had the building restrictions attached. The Fitzgerald’s act of sale incorporated the restrictions by reference.
Mr. Nepveaux filed suit alleging that the construction of the townhouses by Mr. Fitzgerald was in violation of the following building restrictions:
“1. It is agreed that the said lots shall be used for residential purposes only.
2. Any house erected on said lot shall have a minimum cost of $40,000.00 and 2,200 square feet, based on prevailing cost levels at the time of building said house; there shall be no brick siding used; that the garage shall be of the same material as the house; that the said dwelling shall be a minimum of twenty (20') feet from the road; that the fence, walls, if any, shall consist of brick or masonry construction, wood and/or chain link type wire fence. It is further understood and agreed that Vendor shall require all property adjacent to or fronting on Cypress Drive for a distance of one hundred (100') feet from said street to meet with these identical restrictions contained herein.
3. It is agreed that the minimum width of said lots in residential area shall be one hundred (100') feet. * * * ” (emphasis added)
At trial it was established that each townhouse contained approximately 1,100 feet, and cost approximately $30,000 to build. Each townhouse was completely self-contained and was separated from its neighboring townhouses or residences by a firewall. Each was to be occupied by only one tenant or family; each had a separate roof, separate utilities, separate kitchen, separate bathrooms, separate controllable heating and air conditioning systems, separate mailboxes, separate front and rear doors and separate outdoor patio. The only thing each dwelling had in common was one common wall. Mr. Hirschel Hoffpauir, after being accepted by the court as an expert in the field of architecture, testified that each townhouse or dwelling (12 of them in all) was a separate and distinct building. He based his opinion, inter alia, on the fact that the National Building Code, adopted and used by the City of Opelousas, and the Standard Building Code, used in Baton Rouge, require multi-family houses to be separated by firewalls.
The trial court found that the building restrictions dealing with minimum size and cost of any house were not applicable to the townhouses, and denied relief. From that judgment plaintiff has perfected the present appeal wherein he contends the building restrictions are indeed applicable to townhouses. Appellees maintain the restrictions are ambiguous and, therefore, they cannot be enforced in the present situation.
Actions for the protection and enforcement of building restrictions may be brought against any violator by the persons entitled to those property rights. Willis v. New Orleans Unit of Jehovah’s Witnesses, Inc., 156 So.2d 310 (La.App. 4th Cir.1963).
LSA-C.C. Art. 775 defines building restriction as a charge on immovable property imposed “in pursuance of a general plan governing building standards, specified uses and improvements.” Building restrictions are sui generis real rights likened to predial servitudes. LSA-C.C. Art. 776; Yiannopoulos, Predial Servitudes § 192 in 4 La.Civ.L. Treatise 502 (1983).
The standards governing the construction of such building restrictions was set forth by this court in Gwatney v. Miller, 371 So.2d 1355 (La.App. 3rd Cir.1979). In Gwatney, the defendant was in the business of operating “street fairs” for schools and churches at differing locations and stored his carnival equipment at his residence when not conducting such a fair. In finding the storage to be in violation of a restrictive covenant against commercial usage of the property, we observed:
In the case of Salerno v. De Lucca, 211 La. 659, 30 So.2d 678 (1947) the court stated:

“It is well established jurisprudence of this state that where restrictions have 
*592
been inserted in deeds in pursuance of a general plan devised by the ancestor in title to maintain certain building standards and uniform improvements, such as those here under consideration, they are valid and enforceable. Queensborouerh Land Co. v. Cazeaux. 1S6 La. 724, 67 So. 641, L.R.A.1916B, 1201, Ann.Cas.1916D, 1248; Hill v. Wm. P. Ross. Inc.. 166 La. 581, 117 So. 725; Rabouin v. Dutrev. 181 La. 725, 160 So. 393; and Ouachita Home Site & Realty Co. v. Collie. 189 La. 521, 179 So. 841. These are real rights or covenants that run with the land for the benefit of land owners within the area and to prevent the violation of these restrictions injunction proceedings may be resorted to. See Collie and Queensboro cases, supra, and also Edwards v. Wiseman. 198 La. 382, 3 So.2d 661.

Although these stipulations are stric-ti juris and every doubt should be resolved in favor of the unencumbered use of the property, whenever differences arise as to the extent or limitation of these restrictions, we must look to the intention of the party encumbering the property from the words used in the stipulations in the deed, consideration being given to the entire context of the instrument rather than to a single phrase or clause, for obviously those acquiring the property in the restricted area were motivated and influenced to purchase the same because of these limitations and they are entitled to the presumption that they will be fairly and faithfully complied with.” [3 So.2d] at pp. 679-80

Applying this reasoning, the Supreme Court in Salerno, supra, determined that a restrictive covenant which provided that “ ‘there shall be no business establishments’ ” on defendant’s property was intended to preclude the erection of billboards thereon.
In the case of LeBlanc v. Bowen, 238 So.2d 369 (La.App. 4th Cir.1970) a tract of land which was situated adjacent to property subject to a residential restrictive covenant sought by plaintiff to be enforced was being used by a trailer sales company for commercial purposes. On occasion the trailer sales company would partially park its trailers on defendant’s property and would use a roadway on defendant’s property to transport its trailers back and forth from the highway. The court determined that such activities on defendant’s property were within the scope of a restrictive covenant which provided that:
“No commercial establishment, . nor dairy, nor noxious or offensive establishment shall be erected or maintained thereon; ”
In each of the cases cited in the aforementioned quote, the defendant sought to avoid application of the building restriction by alleging its ambiguity, as do the present defendants.
A similar defense was raised in Cunningham v. Hall, 148 So.2d 808 (La.App. 4th Cir.1963) wherein it was stated:
The words “one dwelling home” or “single dwelling house,” as used in a deed restricting construction, indicate a manifest intent that a residence erected should be limited in design to the accommodation of a single family, precluding the erection of a single building containing three wholly distinct apartments. Lebo v. Fitton, 71 Ohio App. 192, 41 N.E.2d 402,403. In that case the court, in giving a strict construction to the restriction, held:
“If the position of the defendants is correct that the restriction applies only to the number of residences and not to the number of accommodations therein for separate families, a twenty story apartment building could be erected upon the premises. If two families can occupy the residence without violation of the restriction, then one hundred families [can] do so. Such is not the obvious intention of the parties.”
In Harris v. Roraback, 137 Mich. 292, 100 N.W. 391, the court construed the clause, “ * * * will not occupy said premises except for one dwelling house to each lot,” to mean:
“When the parties agreed not to occupy said premises, ‘except for one dwelling house,’ they obviously intend *593 ed to agree, and they did therefore agree, that no building should be thereon erected which could not be described as one dwelling house in the sense in which the words are ordinarily used— and we must presume these words to be used in that ordinary sense—a building planned and designed for two or more dwellings cannot properly be described as one dwelling house. I think we are bound to hold that by the language in question the parties to this deed intended that no house except one planned and designed for a single dwelling should be erected.”
In Killian v. Goodman, 229 Mich. 393, 201 N.W. 454, the court was very terse in construing “a dwelling house” and “a residence,” as follows:
“ * * * this court held that the words ‘a dwelling house,’ used in a restrictive covenant, mean a single dwelling house. If a dwelling house means a single dwelling house, why does a residence mean a single residence? The letter ‘a’ has some significance before the word ‘residence.’ A horse means one horse, a single horse; it does not mean a team or 33 horses. So a residence means one residence, a single residence, not 33 residences. Giving to the words used in these restrictions their ordinary commonly understood meaning, ‘a dwelling house’ means one single dwelling house, and ‘a residence’ means one single residence.”
To the same effect is Schadt v. Brill, 173 Mich. 647, 139 N.W. 878, 45 L.R.A., N.S., 726 and Macy v. Wormald, Ky., 329 S.W.2d 212.
The townhouses were condominiums. La.R.S. 9:1121.103(1). The Louisiana Condominium Act (Act 682 of 1979) makes condominiums subject to applicable ordinances, zoning, and building restrictions. La.R.S. giim-m[1]
Although building restrictions are strictly construed, the expressed intention of the parties, as contained in the covenant, must be ascertained, according the words therein their usual meaning and with due consideration to the entire context of the document.
Construing the words of the building restriction in their ordinary sense, we find that the term “any house” encompasses any single residential unit, including individual townhouses. Property usage is restricted to residential purposes only. The restrictive covenants in the building restrictions do not limit themselves to conventional single family residences, rather, they apply to “all houses”. The intent in this regard is clear. Pursuant to the Louisiana Condominium Act these townhouses are subject to the applicable building restrictions. As aforementioned, each town house cost $30,000 and contains 1,100 square feet. The restrictions establish a minimum cost of $40,000 and 2,200 square feet. Hence, defendants’ townhouses are in violation of the building restrictions.
Accordingly, the judgment of the trial court is reversed and the case remanded for appropriate declaratory relief. All costs are cast upon defendants.
REVERSED AND REMANDED.
KNOLL, J., dissents with reasons.

. “§ 1121.106. Applicability of ordinances, zoning, and building restrictions
“A zoning, subdivision, building code, or other land use law, ordinance, or regulation may not prohibit the condominium form of ownership or impose any requirement upon condominium property which it would not impose upon a physically identical development under a different form ,of ownership. Otherwise, no provision of this Part invalidates or modifies any provision of any zoning, subdivision, building code, or other land use law, ordinance, or regulation.”