793 So.2d 1286 (2001)
Henry E. PAYNE, Plaintiff-Appellant,
v.
Willie John MELANCON and Sandra Kaye Melancon, Defendant-Appellee.
No. 34,667-CA.
Court of Appeal of Louisiana, Second Circuit.
September 17, 2001.
William E. Byram, Counsel for Appellant.
Sidney J. Zeller, Counsel for Appellee.
Before BROWN, WILLIAMS and CARAWAY, JJ.
WILLIAMS, J.
The plaintiff, Henry Payne, appeals from a district court's grant of summary judgment in favor of defendants, Willie and Sandra Melancon, dismissing Payne's suit for an injunction. For the following reasons, we affirm.

FACTS
Payne and the Melancons are residents of the Ranchland Acres subdivision in DeSoto Parish. The subdivision is subject to a set of building restrictions recorded in the DeSoto Parish public records in 1969 that provide, in pertinent part:
From this date forward, the property hereinafter described shall be held, owned and conveyed subject to the following reservations, restrictions and covenants:
All of Ranchland Acres Unit 1, a Subdivision of DeSoto Parish, Louisiana, *1287 as per map recorded in Conveyance Book 261 at pages 543, 545 and 547 of the Record of DeSoto Parish, Louisiana, EXCEPT Lots Five (5) and Six (6) Block B; Lots One (1) and Two (2) Block C; all of Blocks M, R, S, DD and Lots Six (6) through Fourteen (14), both inclusive, Block EE.
1.

LAND USE AND BUILDING TYPE. None of the lots listed above shall be used except for residential purpose (sic). No building shall be erected, altered, place (sic) or permitted to remain on any lot other than a new one detached single-family dwelling not to exceed two stories in height and a private garage.
2.

DWELLING SIZE. The habitable floor area of the main structure, exclusive of interior storage, open porches and garages, shall not be less than 1200 square feet. All main structures shall be constructed in the subdivision, and no main structures shall be moved to a lot therein.
. . . .
5.

TEMPORARY STRUCTURES. No structure of a temporary character, trailer, basement, tent, shack, garage, barn or other outbuilding shall be used on any lot at any time as a residence either temporarily or permanently, (except that trailers may be used as a residence in all of Blocks M, R, S, DD and Lots 6-14, both inclusive, Block EE).
. . . .
18.

EXCEPTED PROPERTY: These restrictions do not apply to Lots 5 and 6, Block B; Lots 1 and 2, Block C, All of Block M, R, S, DD and lots 6-14, Block EE Ranchland Acres, Unit 1.
Ranchland Acres, Inc., it (sic) successors and assigns reserve the right to use said Lot 5 and 6, Block B, and Lot 1 and 2, Block C, for Neighborhood Business (Commercial) Purposes, and/or Residential Purposes, and to use all of said Blocks M, R, S, DD, and Lots 6-14, Block EE for Trailers or residential purposes. In the event these excepted properties are used for residential purpose (sic), then all covenants shall apply.
The Melancons own Lot 14 in block M of the subdivision. Originally, they lived in a single mobile home on this property. However, in December 1995, the Melancons moved a second mobile home onto their property. According to their answers to interrogatories, Willie and Sandra Melancon along with Sandra's mother, Alice Greenwald, live in one trailer and the Melancons' two teenage sons live in the other trailer.
On October 8, 1996, Henry Payne filed a petition for an injunction against the Melancons demanding that the Melancons remove one of the two trailers. Payne urged that the lot was being used for residential purposes, and therefore, the building restrictions applied to the use of the lot, including the restriction limiting the occupant to "a new one detached single-family dwelling." The Melancons answered the petition, urging that the restrictions did not prohibit them from using two trailers on their lot as residences.
On March 10, 2000, the Melancons filed a motion for summary judgment. The motion again asserted that their family was residing in both trailers and that the building restrictions did not prohibit the placement of two trailers on a lot in their section of the subdivision. The motion was supported by an affidavit of the Melancons *1288 stating that their lot was a single-family homestead with two trailers occupied by their family members; the motion was further supported by their answers to interrogatories asserting the same facts. Payne opposed the motion with a brief in opposition, the building restrictions, a letter from an attorney to the Melancons asking them to remove one trailer and what appears to be a plan of the subdivision showing the various blocks and lot numbers.
On May 24, 2000, the trial court granted summary judgment in favor of the Melancons. In its reasons for judgment, the court opined that a reader of the building restrictions could not determine whether the building restrictions applied to a particular lot in the subdivision without inspection of the lot in question. The court concluded that this ambiguity raised doubt regarding the extent of the applicability of the restrictions.
From the judgment in favor of the Melancons, Payne now appeals.

DISCUSSION
Prior to 1977, the Civil Code did not contain any provisions in regard to building restrictions. However, in that year, the legislature enacted Title V of Book II of the Code and articles 775-783 now describe the nature and enforcement of such restrictions. LSA C.C. art. 775 provides:
Building restrictions are charges imposed by the owner of an immovable in pursuance of a general plan governing building standards, specified uses, and improvements. The plan must be feasible and capable of being preserved.
LSA-C.C. art. 783 provides, in part:
Doubt as to the existence, validity, or extent of building restrictions is resolved in favor of the unrestricted use of the immovable.
Restrictive covenants are to be construed strictly. Cashio v. Shoriak, 481 So.2d 1013, 1015 (La.1986). Although building restrictions are strictly construed, the expressed intention of the parties, as contained in the covenant, must be ascertained, according to the words therein, their usual meaning and with due consideration to the entire context of the document. Nepveaux v. Linwood Realty Co., Inc., 435 So.2d 589, 593 (La.App. 3d Cir. 1983), writ denied, 441 So.2d 750 (La. 1983).
The preamble to the restrictions exempts block M, among others, from the general restrictions. Section 18 explains what restrictions apply to these excepted properties:
18.

EXCEPTED PROPERTY: These restrictions do not apply to Lots 5 and 6, Block B; Lots 1 and 2, Block C, All of Block M, R, S, DD and lots 6-14, Block EE Ranchland Acres, Unit 1.
Ranchland Acres, Inc., it (sic) successors and assigns reserve the right to use said Lot 5 and 6, Block B, and Lot 1 and 2, Block C, for Neighborhood Business (Commercial) Purposes, and/or Residential Purposes, and to use all of said Blocks M, R, S, DD, and Lots 6-14, Block EE for Trailers or residential purposes. In the event these excepted properties are used for residential purpose (sic), then all covenants shall apply.
In the first half of the first sentence of the second paragraph, the restrictions make a distinction between "Neighborhood Business (Commercial) Purposes" and "Residential Purposes." In common application, there is a clear distinction between business or commercial purposes and residential purposes. In the second half of the first sentence of the second paragraph, the restrictions make a similar distinction between "Trailers" and "residential purposes." *1289 Although the distinction between trailers and residential purposes is weaker than the distinction between residential and commercial purposes, the restrictions nevertheless do not treat trailers as synonymous with "residential purposes." The second sentence of the second paragraph purports to apply to all excepted properties and specifies that when the excepted properties are used for residential purposes, all covenants shall apply.
By reference to the other restrictions, Section 18 is subject to two interpretations. First, one may read the "trailers or residential purposes" distinction as an "exclusive or" distinction. This reading is suggested by the restriction's distinction between commercial and residential purposes. Reading the restriction in this manner, a residential purpose is established when a detached single-family dwelling is constructed on the lot, and all of the restrictions apply, but the installation of a trailer on the lot is not a use for a "residential purpose" and the restrictions do not apply. On the other hand, the second construction of this restriction is to read "trailers or residential purposes" as a single phrase because none of block M is within the possible commercial-use zone defined in Section 18. Under this reading, the use of either a trailer or a traditional home on a lot in block M imposes the remainder of the restrictions on the lot.
We decline to undertake an inquiry into the intent of the drafter of the restrictions. The Civil Code commands that doubt as to the extent of building restrictions be resolved in favor of the unrestricted use of the immovable. Section 18 which describes the permissible use of lots in block M, is subject to two permissible interpretations, one of which imposes the remainder of the restrictions on the lot and one which does not impose those restrictions. Interpreting the provision strictly in favor of the unrestricted use of the immovable, we resolve the doubt in favor of the interpretation that does not impose the restrictions on a lot in block M used for trailers.

CONCLUSION
For the above reasons, the judgment in favor of the Melancons is affirmed. Costs of this appeal are assessed to the appellant, Henry E. Payne.
AFFIRMED.