WILLIAMS, J.
LThe defendants, David and Cynthia Johnson, appeal a judgment in favor of the plaintiff, North DeSoto Estates, LLC. The trial court found that the Johnsons had violated the subdivision building restrictions and ordered that they replace the garage roof or remove the structure. For the following reasons, we reverse and render.
FACTS
In November 2005, Bradley Sepulvado, manager of North DeSoto Estates, LLC (“North DeSoto”), filed a plat for the Northwood Estates subdivision in the De-Soto Parish conveyance records. In January 2006, Sepulvado filed a document in the public records entitled “Northwood Estates Unit 1 Restrictive Covenants.” In December 2006, David and Cynthia Johnson purchased a house on Lot 20 in North-wood Estates with a deed providing that the sale was subject to “any restrictions, easements and servitudes of record.” Additionally, the Johnsons’ title insurance policy stated that their property was subject to the restrictive covenants recorded in the public records of DeSoto Parish.
*1070 In January 2007, Sepulvado stopped at Lot 20 to ask David Johnson about items that he had placed in his driveway and stated that there were subdivision rules against leaving things in front of the house. Johnson answered that he was in the process of moving into the house and planned to build a garage. After beginning construction of the detached garage, Johnson was visited by Sepulvado and Scott McFerren of North DeSoto. They gave Johnson a copy of the subdivision building restrictions and informed him that the garage needed siding to match the material used on |2the house and a concrete floor. The parties disagreed on whether they had discussed a requirement of an 8-12 roof pitch for the garage at that time.
On January 25, 2007, North DeSoto’s attorney sent a letter by certified mail notifying Johnson that the garage violated the restrictive covenants of Northwood Estates, Unit 1. After receiving the letter, Johnson stopped construction and spoke with Sepulvado. As a result of that discussion, Johnson agreed to make changes as stated in a February 2007 letter to North DeSoto, including installation of exterior siding with the same material used in the main dwelling and a concrete floor. Believing that the changes satisfied Sepul-vado’s objections, Johnson resumed construction of the garage.
Some days after the garage rafters were installed, Sepulvado called the Johnsons and said that the subdivision covenants required the garage to have a roof with 8-12 pitch. After reading the language of the building restrictions, Johnson believed that an 8-12 roof pitch was not required for the garage and did not make such a change. Subsequently, the plaintiff, North DeSoto, filed a petition to enforce the restrictive covenants against the defendants, David and Cynthia Johnson.
After a bench trial, the court issued written reasons for judgment, finding that the building restrictions had been validly recorded, that the language was unambiguous and that the defendants knowingly violated the restrictions in building the garage roof. The trial court rendered judgment ordering the defendants to either replace the metal roof with a shingle roof at an 8-12 pitch or remove the garage from the lot within 90 days of the | ¿judgment date. Defendants appeal the judgment.
DISCUSSION
In three assignments of error, the defendants contend the trial court erred in finding that the building restrictions unambiguously required that the garage have a shingle roof with an 8-12 pitch. Defendants argue that the building restrictions are subject to two reasonable interpretations and must be construed in favor of the unrestricted use of the immovable. We do not address the assignment regarding applicability of the covenants, but assume that the building restrictions were properly recorded so as to give sufficient notice to purchasers of lots shown in the separately filed subdivision plat.
Building restrictions are charges imposed by the owner of an immovable in pursuance of a general plan governing building standards, specified uses and improvements. LSA-C.C. art. 775. Doubt as to the existence, validity or extent of building restrictions is resolved in favor of the unrestricted use of the immovable. LSA-C.C. art. 783. Building restrictions are to be strictly construed. Cashio v. Shoriak, 481 So.2d 1013 (La.1986); Whitaker Construction Company, Inc. v. Larkin Development Corporation, 34,297 (La. App.2d Cir.12/6/00), 775 So.2d 571. The intent of building restrictions must be ascertained according to the words therein, *1071 their usual meaning and with consideration of the context of the words in the document. Payne v. Melancon, 34,667 (La.App.2d Cir.9/17/01), 793 So.2d 1286. If the instrument purporting to create a building restriction is susceptible to more than one reasonable interpretation, thereby creating ambiguity and doubt as to the subdivider’s intent, the interpretation that |4Ieast restricts the property will apply. Head v. Gray, 41,290 (La.App.2d Cir.8/23/06), 938 So.2d 1084.
In the present case, the building restrictions provide in pertinent part:
Construction is limited to single family dwellings, garages and other peripheral structures that are at least 1 but not more than 2 ½ stories above the ground. All residences must be of new construction, (brick) with a centrally cooled and heated living area of 1800 square feet or more built on site with a concrete slab foundation. It should have a minimum roof line of 8-12 pitch.
[[Image here]]
All above ground construction that is detached from the main residence is bound by the same building restrictions and must be constructed with the same type of exterior materials as the main dwelling.
The word “should” is permissive and generally denotes discretion. Louisiana Seafood Management Council v. Louisiana Wildlife & Fisheries Commission, 97-1367 (La.5/19/98), 715 So.2d 387.
In reviewing the particular restrictions at issue in light of the whole instrument, we note that in contrast to the building restrictions couched in mandatory language, such as the provisions stating residences “must be” new construction and driveways “must be concrete,” the provision stating that a residence “should have” a roof with 8-12 pitch employs permissive language. Thus, a reasonable interpretation of the restriction is that installation of a roof with 8-12 pitch was not mandatory for a residence, but was a recommendation. Similarly, another provision suggests that subdivision lot owners along the lake “should” form a committee to provide for upkeep. Forming a committee was not mandatory for such lot owners.
|¡r,Consequently, third parties, such as defendants, who relied on the language of the building restrictions could reasonably conclude that since a roof with 8-12 pitch was not mandatory for the residence, a detached garage would not be required to have such a roof. Because the building restriction is susceptible to more than one reasonable interpretation, the language is ambiguous and creates doubt as to the extent of the restriction. Therefore, the interpretation that least restricts the use of the property is applicable and the trial court erred in finding that defendants were required to install a garage roof with 8-12 pitch.
The building restrictions are silent regarding the type of material to be used in construction of the roof for either a residence or garage. In asserting that defendants’ garage must have a shingle roof because the residence has such a roof, plaintiff relies on the building restriction language stating that construction detached from the residence “must be constructed with the same type of exterior materials as the main dwelling.” Neither the word “exterior” nor the term “exterior materials” is defined in the building restrictions. Thus, the issue is whether a reader of the restrictions could reasonably interpret the reference to exterior as meaning the outside walls of the residence and not including the roof.
In considering their ordinary meaning, the words exterior and roof are not synonymous, since exterior refers to the outside surface of something whereas roof most often means the top covering of a building. *1072 Although the broadest possible understanding of a building’s exterior could include the roof, building restrictions are to be narrowly construed and a person could 1 (¡reasonably interpret exterior as referring to the outer walls of the house and not the roof. In addition, the relevant building restriction language requires that the residence be of new construction with an exterior of brick. Since a person would not reasonably expect the roof to be built of brick, the language of the building restrictions indicates that the exterior of the residence does not incorporate the roof.
Thus, the building restriction stating that a garage be built with the same type of exterior materials as the main dwelling could reasonably be interpreted as requiring only that the exterior walls of the residence and garage be built with the same type of materials. Because the building restriction is susceptible to two reasonable interpretations, the resulting ambiguity raises doubt as to the extent of the restriction that must be resolved in favor of the unrestricted use of the property. Consequently, the trial court erred in ordering the defendants to replace the metal roof of the garage with a shingle composite roof. In reaching this conclusion, we pre-termit discussion of the defendants’ remaining assignments of error.
CONCLUSION
For the foregoing reasons, the trial court’s judgment is reversed. Judgment is hereby rendered in favor of the defendants, David and Cynthia Johnson, and the plaintiffs claims are dismissed with prejudice. All costs, including those in the district court and on appeal, are assessed to the plaintiff, North DeSoto Estates, LLC.
REVERSED AND RENDERED.