GLADNEY, Judge.
This appeal by Robert E. Chrysler and his wife is from a judgment in favor of Bertha Mae P. Adair granting a permanent injunction enjoining appellants from maintaining a cyclone fence and ordering its removal.
The parties in interest herein are neighbors and owners of adjacent lots in Bolinger Hills Subdivision, Unit No. 1 of Caddo Parish. All property in the subdivision is subject to certain “Protective Covenants for Bolinger Hills Subdivision, Caddo Parish”, an instrument recorded in Conveyance Book *553 866, page 769.[1] The construction of the fence contrary to the expressed provisions of such covenants is not denied, but the action is defended on the ground that such restrictions were no longer legally effective.-
Respondents contend there have been multiple violations of the stated restrictive covenants sufficient to establish the abandonment of the minimum setback restriction complained of by plaintiff. Further, appellants argue that plaintiff did not exercise the remedy at hand within the time provided by the restrictive covenants, and therefore, the action of respondent should not be considered as violating the restrictions.
A statement of the principles of law particularly applicable herein are found in Guyton v. Yancey, 240 La. 794, 125 So.2d 365 (1961) wherein Justice Hamiter was confronted with whether, vel non, the restrictive covenants had been so disregarded and abandoned as to constitute a subversion of the original scheme of the East Ridge Subdivision of Caddo Parish as to result in a substantial change in the neighborhood. Therein he recognized that acquiescence as. to defeat the enforcement of a restrictive covenant depends upon the circumstances, of each case and the character and material-.ity of the permitted breach. The court quoted with approval the following extract from 14 Am.Jur. § 295-298:
“ ‘ * * * Notwithstanding acquiescence in other violations of a building line restriction, an owner of property will not be denied equitable relief to enforce it if the restriction can be shown to be of value to him and such breaches have not resulted in a subversion of the original scheme of development resulting in a substantial, if not an entire, change in the neighborhood.’ ” [125 So.2d 365, 368]
Other violations disclosed by photographs evidence two single upright fence posts, some barb-wire enclosures and a number of small structures housing individual water wells. All property owners of the subdivision are supplied with water from their own water wells and the well covers or well houses necessarily must have the express or tacit consent of the committee charged with architectural control. See Footnote 1, “D-2”, supra. Such small structures afford protection to the owner’s water supply against severe weather. The other violations referred to by appellants appear to be of a minor nature.
We likewise find no merit in the contention of appellants that relief by in *554 junction should have been sought while the fence was being constructed. No prescriptive plea has been presented.
Finding no error in the judgment from which defendants have appealed, it is affirmed at appellants’ cost.

. Indicated as pertinent provisions are:
PART C — RESIDENTIAL AREA COVENANTS
C-l LAND USE AND BUILDING TYPE. No lot shall be used except for residential purposes. No building shall be erected, altered, placed or permitted to remain on any lot other than one' detached single-family dwelling. No Commercial Enterprise of any nature shall be entered into by owners and/or occupants on property in this subdivision. Provisions for domestic servants may be had, preferably in quarters attached to dwelling.
:¡: s¡: * * * * * •
C-5. PENCES, no fence shall be constructed or allowed to remain in front of the minimum building setback line. Any fencing must be of attractive and durable materials. No barbed wire, field fencing (hog wire), poultry wire or similar types may be used. Services areas should be screened by attractive fencing or planting.
* * * * Sic * $
C-8. TEMPORARY STRUCTURES. No structures such as house trailer, tent, shack, or other temporary outbuilding shall be kept on any lot at any time.
* * :¡s * * * *
PART D — ARCHITECTURAL CONTROL
* * * * # *
D-2. ARCHITECTURAL CONTROL. No building shall be erected, placed or altered on any lot until the construction plans and specifications and a plan showing the location of the structure have been approved by the architectural control committee as to quality of workmanship and materials, harmony of external design with existing structures, and as to location with respect to topography and finish grade elevation.