289 So.2d 521 (1973)
MELROSE CIVIC ASSOCIATION
v.
UNIVERSAL BUILDERS, INC.
No. 9595.
Court of Appeal of Louisiana, First Circuit.
December 17, 1973.
Rehearing Denied February 15, 1974.
Writ Refused April 11, 1974.
*522 Teddy W. Airhart, Jr., Baton Rouge, for appellant.
G. Emitte Core, Baton Rouge, for appellee.
Before LOTTINGER, BLANCHE and CRAIN, JJ.
LOTTINGER, Judge.
This is a rule for preliminary injunction sought by the Melrose Civic Association and several property owners in Melrose Subdivision to enjoin the construction of two residences on two lots in Melrose Subdivision because of an alleged violation of the building restrictions of the subdivision. The Lower Court granted the plaintiffs a preliminary injunction from which respondent in rule, Universal Builders, Inc., has taken this devolutive appeal.
Universal Builders, Inc. is the owner and builder of two residences on Lots No. 278A and 278B in Melrose Subdivision, East Baton Rouge Parish, Louisiana, these lots being a resubdivision of Lot 278 of said subdivision. The subdivision restrictions for the portion of the subdivision in which the subject lots are situated state that residences shall not be located nearer than 10 feet from the side lines of any lot. It is undisputed that the residences in question are 7.5 feet from the respective side lines of Lots 278A and 278B, so that the two houses under construction are 15 feet apart. There is no dispute that the subdivision restrictions require that no structure shall be built nearer than 10 feet from each side line of the property. However, respondent in rule defends its action in asserting that other unopposed violations of building restrictions destroy the original purpose of the restrictions in question and the restriction is no longer enforceable on the theory of waiver or relinquishment. In other words, it is defendant's position that there has been such a general wide spread violation of the restriction so as to render the restrictive covenants of no force and effect.
The Louisiana Supreme Court case of Guyton v. Yancey, 240 La. 794, 125 So.2d 365 (1961), involved a subdivision in which the original owners had included a building restriction requiring 30 feet clearance from each side of the property line, and 80 feet set back form the front property line. The defendant's proposed construction would have violated the front set back requirement by approximately 27 feet. When the plaintiff sought an injunction to prevent this violation, the defendant contended that existing violations had already destroyed the original scheme of the development.
The evaluation of whether or not the unopposed violations are sufficient to constitute a waiver or relinquishment of the building restrictions must be individualized on the facts of each case. In Guyton v. Yancey, the Supreme Court agreed with the two lower Courts in concluding that there had not been a waiver or abandonment, and they enforced the restriction *523 upon concluding that the existing violations of the front line set back of five violations and of the side line requirement of four violations were relatively minor or so little as to be negligible.
The primary question presented herein is whether the restrictive covenants which apply to the portion of Melrose Subdivision in which the lots in question are situated have been so disregarded and abandoned as to constitute a subversion of the original scheme of Melrose Subdivision as to result in a substantial change in the neighborhood.
The plaintiff-property owners furnished evidence showing that there were only five side line violations in the area of the subdivision effected by the pertinent restrictions, and for the most part these were created by garages or assessory structures. They also presented testimony indicating that on several early occasions, the property owners steadfastly opposed efforts on the part of others to change the character of the subdivision.
On the other hand, defendants submitted testimony that there exist as many as 19 violations of the side line restrictions. However, it appears that five of these alleged violations occurred on lots facing on North Foster Drive and involve lots which have been released from the subdivision restrictions by act of the property owners according to testimony given in the Lower Court, but no act was introduced to substantiate this testimony. Nevertheless, these lots are on the outer perimeter of the subdivision and do not seriously effect the inner core of the subdivision. It seems, however, that almost all of these remaining fourteen violations, as alleged by the defendants, are the result of carports, storage sheds, and boat sheds which owners added after the original construction, none of which are inhabited, and none of which are structurally substantial in nature.
The Lower Court found that there has not been an abandonment of the subdivision scheme provided by the original subdividers. In written reasons for judgment the Lower Court stated:
"Admittedly, there has been some erosion and change in the character of the outer limits of the subdivision, but apparently this has been done with the knowledgeable acquiescence and permission of the property owners of the subdivision with the intent of maintaining the integrity of the inner core of the subdivision while realistically acknowledging the commercial pressures exerted on the lots facing a major thoroughfare such as North Foster Drive. Further, considering the type and realatively modest number of violations, in the inner core of the subdivision as compared with the large number of residences (270) in Melrose, it appears that there has been an insufficient deviation from the restrictions as to warrant a conclusion that the characer of the subdivision has been materially altered. ..."
In Guyton v. Yancey, the Supreme Court of Louisiana quoted 26 C.J.S. verbo Deeds § 169, p. 1164 which we find particularly applicable to this case and which we quote here:
"The character, as well as their number, of claimed violations must be considered in determining whether the complaining property owners have waived or forfeited the benefit of a restriction. Where an owner has permitted or acquiesced in so many violations of the restriction, or such violation, without objecting thereto that the plan may fairly be said to have been abandoned, he cannot thereafter object to a subsequent violation; waiver has been held not to result unless there have been general and multiple violations without protest. On the other hand, if violations have not been permitted to such an extent as to evidence an abandonment of the plan, a party will not be prevented from objecting to further violations by the fact that he has not objected to previous violations by others, particularly where such violations did not immediately affect the enjoyment of *524 his own premises, or where they were trivial, or minor, in character as compared with those complained of; and the fact that plaintiff has acquiesced in, or has not objected to, a violation committed by defendant does not estop him to prevent an additional or enlarged violation."
In view of the fact that in the case before us there seem to be between five and fourteen violations of the side line restriction, all or nearly all of which are caused by carports, boat sheds, storage sheds and other structures which are not structurally substantial in nature, we conclude that the scheme of development of Melrose Subdivision, as conceived and established by the subdividers, and which the property owners in Melrose have from time to time attempted to keep intact, have not been abandoned or disregarded as they pertain to the side line restriction. Accordingly, it is our opinion that plaintiff is entitled to the injunctive relief herein sought.
For the above and foregoing reasons, the judgment of the Lower Court is affirmed, all costs, including the costs of this appeal, to be borne by the appellants.
Judgment affirmed.