352 So.2d 1303 (1977)
LAMANA-PANNO-FALLO, INC.
v.
Bernhardt C. HEEBE, Executor of the Succession of Marie Webre, widow of Edwin B. Norris.
No. 9036.
Court of Appeal of Louisiana, Fourth Circuit.
November 29, 1977.
Reuter & Reuter, Arthur C. Reuter, New Orleans, for Lamana-Panno-Fallo, Inc., plaintiff-appellant.
Odom B. Heebe, Curtis, Foster, Hyde & Mooney, Gordon B. Hyde, New Orleans, for defendant-appellee.
Before REDMANN, LEMMON and BOUTALL, JJ.
*1304 BOUTALL, Judge.
This is a declaratory judgment suit by plaintiff Lamana-Panno-Fallo, Inc. against its lessor seeking to obtain a judicial determination of the validity and enforceability of certain usage restrictions in lessor's chain of title. The trial court declared the restrictions invalid and unenforceable, and defendant appeals.
Plaintiff and defendant, Bernhardt C. Heebe, as Executor of the Succession of Marie Webre, widow of Edwin B. Norris, entered into a commercial lease of 9 lots of ground, being lots 1A, 2A, 3A, 4A-A, 4B-A, 5A-A, 5B-A, 6A-A and 6B-A, of Sq. 50, Bonnabel Place Subdivison, fronting on Veterans Memorial Highway (formerly Canal Street) and measuring 312 feet from the corner of Bonnabel Blvd. to the corner of Orion Ave. The lease is for commercial purposes in order to permit the plaintiff to construct and operate a funeral home or mortuary on the premises, a permitted use of its C-2 Commercial classification under the Comprehensive Zoning Ordinance for the Parish of Jefferson, Ordinance # 3813, as amended. The problem arising in this case is that the lots have been burdened with the following restrictive covenant which would prohibit is commercial use imposed under the Zoning Laws:
"The property shall always be used for residence purposes only, and no commercial business shall be conducted or operated upon the premises."
Thus, if the restrictions in lessor's title prevail, the commercial use forming the basis of the lease will be prohibited, yet at the same time, if the zoning law is to be enforced, only incidental residential use may be achieved. Thus the cumulative effect of the prohibited uses under the law and the title restrictions is to effectively deprive the owner and the lessee of nearly all use of the property. Since commercial use of the property is the basis of the lease between the parties, a justiciable controversy is presented to the court for consideration under the declaratory judgment law.
The trial court has resolved this controversy by declaring that based on the facts in this case, the title restrictions prohibiting commercial or business uses are no longer valid or enforceable as regards this property and that commercial construction and use thereon is no longer prohibited. We agree.
The restrictive covenants in the title did not come into being as one overall or general plan of restrictions imposed upon the entire subdivision, but instead, restrictive stipulations were inserted in the initial title deeds from the owner and developer, Bonnabel Land Company, Inc., to purchasers of lots in Bonnabel Place. At the time that the subdivision was created, some 60 years ago, Bonnabel Place was a long narrow tract extending through undeveloped land and was bi-sected in the approximate middle by a wide drainage canal with a street running alongside named Canal Street. As the entire area developed, the drainage canal and Canal Street became Veterans Memorial Highway, presently one of the three most heavily congested major East/West traffic arteries in Jefferson Parish, extending from the Orleans Parish line to the St. Charles Parish line. With the construction of this major thoroughfare, the nature of the land use in the area changed, and that portion of Bonnabel Place fronting on both sides of Veterans Memorial Highway is presently substantially and almost totally developed and built up as commercial properties and used for commercial purposes. The trial judge found the following facts:
"There are 72 lots in Squares 40 through 53, inclusive, each measuring 52 feet front on Veterans Memorial Highway. Portions of certain lots (in Squares 46 and 47) equivalent to approximately two lots are owned by the Parish of Jefferson, having been acquired for drainage canal and widening of the highway at the western boundary of the subdivision.
"The present composition and use of the 70 pertinent privately owned lots in Bonnabel Place are:
a) One (1) lot (Lot 19 of Square 43) is improved and used as a small single residence (it would appear that even this lot may be in violation of the residential *1305 restrictions prohibiting business uses as there is a "Plants for Sale" sign in the front yard).
b) Fifty-nine (59) of the lots are improved with commercial structures (or used) for a wide variety of business and commercial purposes all in obvious violation of the residential restrictions.
c) Four (4) other lots are unimproved, their use status is unknown, but they also appear to be in violation of the residential restrictions in that they appear to be used for off-street parking of vehicles of contiguous commercial properties; and
d) Defendant's six lots (Nos. 1-6, inclusive, Square 50) are vacant and unimproved and not used for any purpose.
"Thus, with the possible exception of only one lot out of the 70 (i. e., comprising the pertinent area or neighborhood consisting of all lots fronting both sides of Veterans Memorial Highway) 59 have been, and presently are, improved or used in clear and obvious violation of the residential restrictions through a wide variety of commercial and business uses. Exemplary of existing commercial and business uses are the following: bars; cocktail lounges; Greek, American and Chinese restaurants; gasoline service stations; office buildings; merchandise and service buildings and stores; automobile repair shop; grocery; meat market; seafood market; convenience food store; beauty and hair shops; professional offices for doctors, lawyers and dentists; banks; savings and loan association; finance company, sporting goods; boat sales and repair; music store, house furnishings; animal clinic; fast-food franchise stores; etc., etc."
It is apparent from the above that the most desirable and most conformable land use to which this property can be put is the commercial use contemplated by the zoning laws, and not the residential use as required in the title restrictions. Indeed, the trial judge found that the Director of Planning and Zoning for the Parish of Jefferson had evidenced that use and occupancy permits for any type of residential construction or use to any property in a C-2 Commercial District would be refused unless the same accompanies and is in conjunction with a stipulated commercial use. Based upon these facts we support the trial judge's conclusion that the title restrictions are abandoned and are no longer valid or enforceable in regard to this property.
First we note that the facts show the restrictions in question not to have been in pursuance of a general subdivision plan but to have been inserted into a number of individual titles as lots were sold. In such a situation, it has been held that such restrictions, enforceable only by the vendor and not by owners of other titles which may contain the same type of restriction. Murphy v. Marino, 60 So.2d 128 (La.App. 1st Cir. 1952); In Re Congregation of St. Rita Roman Catholic Church, 130 So.2d 425 (La.App. 4th Cir. 1961). The vendor-developer, Bonnabel Land Company, Inc. no longer exists, having been dissolved as of October 29, 1965, and obviously cannot sue to enforce the restrictions, or be made a party to this proceeding.
But we do not base our judgment essentially on that proposition. The facts in this case show abandonment of this restrictive use. Our jurisprudence recognizes that one or more particular restrictions or title stipulations may be invalidated or rendered unenforceable by reason of abandonment or waiver of that particular restriction, notwithstanding that there has not been a general abandonment of all restrictions. Similarly restrictions may be rendered invalid and enforceable in relation to a particular geographical area or neighborhood by reason of substantial violation or abandonment in that particular geographical area notwithstanding that there has not been a general or universal abandonment throughout the entire subdivision.
The leading case is Edwards v. Wiseman, 198 La. 382, 3 So.2d 661 (La.1941) wherein the violation of restrictions of facing the original street by 23 out of 28 corner lots (in a subdivision aggregating *1306 744 lots altogether) was held to constitute an abandonment of the original scheme as to restrictions stipulating as to the facing of residences on those streets. The violations had been so general or substantial without protest so as to defeat the purpose of the original restrictions. The court held that the facts in each case are controlling and that in such an instance the particular building restrictions pertaining to corner lots had been relinquished or waived as to those lots on the one street only, and did not affect other restrictions or other areas of the subdivision.
Similarly we refer to the case of Munson v. Berdon, 51 So.2d 157 (1st Cir. 1951) which dealt with commercial usage. That case noted that of 29 lots facing on Government Street, 20 were improved, 14 of which had commercial buildings and one lot had a residence which was being used commercially. Of the remaining 9 unimproved lots facing Government Street, 5 had no title restrictions. It was found that Government Street was predominantly commercial and was then zoned commercial. Based on these facts the court concluded that there was a change in the character of the property fronting on Government Street subject to the restrictions and permitted use of the subject property for commercial purposes, stating that not to do so would improperly deprive the owner of the use of his property for uses that adjoining owners enjoyed.
Basing its decision on the Edwards v. Wiseman case, supra, our predecessor court in Finn v. Murphy, 72 So.2d 358 (Orl.App.1954) held that where 9 of 16 corner lots in Mirabeau Gardens Subdivision violated restricted covenants relating to fences, the restrictions could not be enforced against defendant's fence on his corner lot.
At the same time, we are not unmindful of the holding in the case of Alfortish v. Wagner, 200 La. 198, 7 So.2d 708 (1942) wherein a general plan of development was found and which stated as a general proposition that adoption by the governmental authority of an ordinance zoning a particular area to commercial uses would not nullify the general plan of development. We agree with that proposition as a general rule, however, in this case, the facts are such as to show a complete abandonment of the restriction against commercial usage of all of the lots in this subdivision fronting along Veterans Memorial Highway. We do not hold that the enactment of a zoning usage change is superior to that of restrictive covenants in the title to property. Our holding is based upon the abandonment of those restrictive covenants, and we hold that they are unenforceable as to this class of property.
Accordingly, we affirm the judgment of the trial court.
AFFIRMED.