# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 13-268

**FOUAD HIJAZI AND RIMI ELSABETH HIJAZI**

**VERSUS**

**ANNE SCHAEFER DENTLER, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2009-5348, DIVISION E
HONORABLE DAVID ALEXANDER RITCHIE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN E. CONERY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of James T. Genovese, Shannon J. Gremillion, and John E. Conery, Judges.

**AFFIRMED.**

**Winfield Earl Little, Jr.**
**Attorney at Law**
**Post Office Box 3759**
**Lake Charles, Louisiana  70602**
**(337) 430-0907**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Fouad Hijazi**
    **Rimi Elsabeth Hijazi**

**Merrick J. (Rick) Norman, Jr.**
**Norman Business Law Center**
**145 East Street**
**Lake Charles, Louisiana 70601**
**(337) 436-7787**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
     **Anne Schaefer Dentler**
     **Bradley Nelson**
     **Karen Nelson**
     **Worth Scott Moffett, III**
     **Timothy O'Dowd**

**Timothy O'Dowd**
**Attorney at Law**
**921 Ryan Street, Suite D**
**Lake Charles, Louisiana 70601**
**(337) 310-2304**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Maria O'Dowd**

**CONERY, Judge.**

Fouad Hijazi and Rimi Elsabeth Hijazi ("Hijazis"), owners of two one-acre lots in a ten one-acre lot development in Lake Charles, Louisiana, filed suit on November 6, 2009, for declaratory judgment against the owners of the remaining eight one-acre lots. The Hijazis sought to dissolve the building restrictions contained in the deeds to the one-acre lots. The restrictions prevented the Hijazis from constructing twelve patio homes on their two one-acre lots. The Hijazis, in paragraphs one and nineteen of their petition for declaratory judgment, admitted the building restrictions encumbered their lots.

Some of the owners of the remaining eight one-acre lots named in the Hijazis' declaratory judgment, Anne Schaefer Dentler, Bradley Nelson, Karen Nelson, Timothy O'Dowd and Maria O'Dowd ("neighborhood owners"), reconvened seeking first a permanent injunction to enjoin the Hijazis from violating the building restrictions, and second a declaratory judgment as to both the validity and enforceability of the building restrictions for the ten one-acre lots. Warren Moffett, III, the developer of the ten acre tract, intervened as a party in interest to enforce the deed restrictions.

The trial court initially granted a preliminary injunction in favor of the neighborhood owners. The preliminary injunction enjoined the Hijazis from dividing their two lots into twelve lots in order to build the twelve patio homes they contemplated. The trial court subsequently denied the Hijazis' motion to dissolve the preliminary injunction and ultimately found in favor of the neighborhood owners at trial on the merits and issued a permanent injunction. Finally, the trial court denied the Hijazis' motion for new trial. The Hijazis appeal the ruling of the trial court finding that the building restrictions on the ten one acre-

lot development at issue were valid and enforceable and have not been abandoned by the actions of any of the neighborhood owners. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

### *History of the Ten One-Acre Lot Development*

In 1996, Worth Scott Moffett, III, a real estate developer and agent, deed-restricted ten, identical, contiguous, one-acre lots on West Sale Road in Lake Charles, Louisiana. Mr. Moffett developed the ten one-acre lots under a general plan and recorded a plat of the "proposed" subdivision in the conveyance records of the Calcasieu Parish Clerks Office. Mr. Moffett never filed a final subdivision plat, but instead developed the ten lots in the same manner as the other forty properties he had developed in that he did not provide the infrastructure, such as roads, sidewalks, etc. He did, however, provide the drainage required by the City of Lake Charles.

The same nineteen reciprocal building restrictions were placed into the original deeds of all ten one-acre lots and are attached to the deeds and identified as "EXHIBIT 'A' RESTRICTIVE COVENANTS." The extensive list of restrictive covenants supports Mr. Moffett's testimony in his affidavit introduced in evidence:

> The building restrictions that I incorporated into each of the deeds of the ten, one-acre lots of the development fronting West Sale Road were identical and were recorded in furtherance of maintaining standards and uniformity in the entire ten-lot development. I wanted big homesteads with large front yards, among other specifications. I wanted the owners of these lots to maintain the standards[] and uniformity specified in the deed restrictions in perpetuity.

The development also contained four ten-acre lots that were not part of the ten one-acre lot development. These four ten-acre lots were designated to be and

eventually were developed separately from the ten one-acre lots and, thus, did not contain the same deed restrictions.

The restrictive covenants applicable to this case state in pertinent part:

1. All tracts shall be used for single family residential purposes only. No structure shall be erected, altered, placed or permitted to remain on any tract which exceeds 2 ½ stories in height. Each residence shall have attached a minimum two-car garage or carport.

2. The front of a building shall be erected, on any tract, no closer than 175 feet nor farther than 215 feet, from the front property line, nor shall a building be built closer than 12-1/2 feet to any property line except the tract bordering on Weaver Road on which the residence shall be no closer than 15 feet from the right of way of the road.

3. No residence shall be constructed with a living area of less than 2,500 sq. feet, exclusive of attics, porches, garages, carports, unheated storage rooms, or other similar areas.

4. The minimum square footage of any first floor area in a multiple story dwelling shall be 1,500 sq. feet of enclosed livable area, exclusive of garages, carports, overhangs, decks patios, unheated storage rooms, or other similar areas. Garage apartments which are included as part of the residence and are occupied by the owners['] servants or family members are permitted.

. . . .

17. These restrictions shall be effective upon the filing of this instrument in the conveyance records of Calcasieu Parish, Louisiana, shall apply to and run in favor of all tracts[,] shall be binding on all persons, and shall remain in full force and effect for a term of for a term of twenty-five (25) years. At the end of the initial twenty-five (25) year term thereafter, these restrictions shall renew and extend automatically for a term of twenty-five (25) years without any action or documentation.

18. These restrictive covenants can be amended in whole or in part by the owners of 8 or more tracts which are conveyed out of the following described property. . . .

### Sales History of the Ten One-Acre Lots

The Hijazis purchased lot one on October 7, 1999, from John Moffett, and purchased lot two on December 3, 1999, from Louise Somers. The original

petition filed by the Hijazis for declaratory judgment clearly states the Hijazis were aware of the restrictive covenants not only at the time of purchase, but at the time of filing their November 6, 2009 petition for declaratory judgment.

The Hijazis were aware that in order to "amend in whole or in part" the restrictive covenants, a vote of eight out of ten of the one-acre lot owners was required. They failed to obtain the necessary votes, and in February 2009, the Hijazis attempted to unilaterally abandon the restrictions on lots one and two. They stated in their affidavit of abandonment, filed on February 17, 2009, "the general plan for which the restrictions were created was abandoned and never developed or pursued as originally intended."

Prior to the Hajazis' "Act of Abandonment" and more than ten years ago, the neighborhood owners, in reliance on the restrictive covenants, purchased their one-acre lots and built their residences in compliance with the restrictive covenants. Ms. Dentler purchased lots three, four, five, and six in September 1999, and subsequently built and continues to reside in an approximately 13,000 square foot home on those lots. Mr. and Mrs. O'Dowd purchased lot eight in May 1996 and continue to reside in the home they built. Mr. and Mrs. Nelson bought lot ten in December 2000 and also built and reside in their home.

## ASSIGNMENTS OF ERROR

The assignments of errors urged by the Hijazis are stated verbatim below:

ERROR ONE: The Trial Court mistakenly held that there were valid subdivision building restrictions in place applicable to Appellant's/plaintiff's two (2) tracts. [sic]

ERROR TWO: The Trial Court mistakenly held that the alleged subdivision building restrictions were still valid and enforceable even though clearly the owner of four of the ten tracts had continuously

4

violated the restrictions for a period in excess of three years causing them to be abandoned.

## LAW AND ANALYSIS

### Standard of Review

The proper standard of review is whether the trial court committed an error of law or made a factual finding that was manifestly erroneous or clearly wrong. *Gibson v. State,* 99-1730 (La. 4/11/00), 758 So.2d 782, *cert. denied,* 531 U.S. 1052, 121 S.Ct. 656 (2000). The reviewing court must review the record in its entirety to make this determination. *Stobart v. State, DOTD,* 617 So.2d 880 (La.1993). "Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Id.* at 882. "Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." *Id.*at 883.

However, statutory interpretations are a question of law. *Shell v. Wal-Mart Stores, Inc.,* 00-997 (La.App. 3 Cir. 3/21/01), 782 So.2d 1155, *writ denied*, 01-1149 (La. 6/15/01), 793 So.2d 1244. Although a reviewing court defers to a trial court's reasonable decision on a question or matter properly within the trial court's discretion, if the trial court's decision is based on an erroneous interpretation or application of the law, such an incorrect decision is not entitled to deference. *Kem Search, Inc. v. Sheffield,* 434 So.2d 1067 (La.1983).

### The Validity of the Building Restrictions

The Hijazis argue the trial court erred in finding the recorded building restrictions were in full force and effect. The trial court in its Ruling of April 19,

2012, after a trial on the merits on February 22, 2012, gave an overview of the basic facts of the case and stated:

> [T]he basic facts of this case are that there are 10 lots on Sale Road, lot 1 and lot 2. Lot 1 is at the corner of Sale and Weaver Road and it goes north toward Nelson Road. Those lots go in consecutive order from Weaver toward Nelson Road. There are 10 lots.
>
> There are building restrictions that were placed on the lots at the time those lots were sold. They were filed into the public record. The Hijazis bought lots 1 and 2. There were no improvements on them and they wanted to build some townhomes or patio homes that are similar to the ones that are across the street on Weaver Road. The deed restrictions prevented them from doing so. That's what brought this matter into court, and the Hijazis argued that there was never a general plan and that they are not valid, and alternatively they argued that there was an abandonment of the plan based on the actions of Ms. Dentler in having an art studio. I'm just going to cite just a few of the applicable standards or the law that's related to these issues.

The trial court relied on La.Civ.Code arts.775 and 776 in its determination that the building restrictions on the ten one-acre lots were valid and enforceable as against the Hijazis with respect to lots one and two.

Louisiana Civil Code Article 775 provides, "Building restrictions are charges imposed by the owner of an immovable in pursuance of a general plan governing building standards, specified uses, and improvements. The plan must be feasible and capable of being preserved."

Louisiana Civil Code Article 776 provides that building restrictions referenced in Article 775 can only be created by a juridical act and states, "Building restrictions may be established only by juridical act executed by the owner of an immovable or by all owners of the affected immovables. Once established, building restrictions may be amended or terminated as provided in this Title."

The trial court found that the building restrictions governing the ten one-acre

lots at issue comported with the requirements of La.Civ.Code art. 775 and did have

a "general plan." In its ruling the trial court stated:

> Building restrictions may be created only by juritical [sic] act under Civil Code article 776. That article does not require any particular form for the establishment of the building restrictions. It is sufficient that the document establishing the restrictions be filed in the registry in some form at the time the developer conveyed the property. The fact that no subdivision plat was of record when the building restriction was created does not affect the validity of the restrictions. That's a particular case that stood for that proposition, but in this case the proposed subdivision plat was filed in the conveyance records. The plat was of record when the 10 identical lots were deed restricted with the same restrictions. The fact that the subdivision was never formally adopted or formally approved does not affect the validity of the restrictions, and the restrictions show a general plan to maintain the character of the neighborhood. As far as there being a general plan, I do find that there was a general plan with regard to those restrictions.

The record supports the trial court's findings that the plat of the ten one-acre

lots developed by Mr. Moffett was filed in 1996 in the conveyance records in the

registry of court, and all of the original deeds to the ten one-acre lots contained the

same identical building restrictions. These restrictions provide a general plan that

envisioned, as stated in Mr. Moffett's affidavit, "big homesteads with large front

yards, among other specifications. I wanted the owners of these lots to maintain

the standards[] and uniformity specified in the deed restrictions in perpetuity."

Thus, we find no error of law in the trial court's determination that a general

plan, pursuant to La.Civ.Code art. 775, was in place at the time of the original

filing of the Hijazis' declaratory judgment.

The building restrictions are binding on subsequent owners whether or not

they are contained in the act of transfer. La.Civ.Code art. 776, comment (c),

*Fitzwater v. Walker*, 281 So.2d 790 (La.App. 3 Cir. 1973). At the time of their

purchase of lot one and two in 1999, the Hijazis were, by virtue of the public

records doctrine, charged with constructive notice of the building restrictions. Thus, the Hijazis' assignment of error one is without merit.

***Abandonment of Deed Restrictions***

The Hijazis' second assignment of error focuses on Ms. Dentler, the owner of four lots, numbers three through six, which are contiguous to the Hijazis' lots one and two. The Hijazis contend Ms. Dentler has "continuously violated the restrictions for a period in excess of three years causing them to be abandoned."

Abandonment of the general plan usually requires a large number of violations of all or most restrictions, which leaves the affected area free of all restrictions. La.Civ.Code art. 782; *Guyton v. Yancey*, 240 So.2d 794 (La.App. 2 Cir. 1960). The trial court correctly concluded, "So the only thing that really would allow the Hijazis to build the patio homes that they want to build would be if all the restrictions were abandoned[,] and I don't find that the entire plan was abandoned."

In order for the Hijazis to construct patio homes that are less than the 2,500 square foot minimum and to place those homes less than the 175 foot mandatory setback from the front of the property, only violations on property subject to the same restrictions are considered in determining the question of abandonment. *Edwards v. Wiseman*, 3 So.2d 655 (La.App. 2 Cir. 1941). Thus, even a change of the neighborhood from residential to commercial would not affect restrictions that relate to a setback from property lines or the required minimum size of the dwelling on the property. *Alfortish v. Wagner*, 200 La. 198, 7 So.2d 708 (1942). However the trial court took great care in addressing the issues of abandonment.

The trial court in its original ruling on the permanent injunction brought by the neighborhood owners, as well as its ruling denying the motion for new trial by

the Hijazis, cited both La.Civ.Code art. 782, and *Gwatney v. Miller*, 371 So.2d 1355 (La.App. 3 Cir. 1979). The trial court found both the code article and case law controlled a determination of the abandonment of building restrictions and, more particularly, the determination of whether by conducting a commercial business from her single family home, Ms. Dentler violated building restriction one. Louisiana Civil Code Article 782 provides:

> Building restrictions terminate by abandonment of the whole plan or by a general abandonment of a particular restriction. When the entire plan is abandoned the affected area is freed of all restrictions; when a particular restriction is abandoned, the affected area is freed of that restriction only.

The trial court also cited *Gwatney* for the proposition that, "It is not every violation of a building restriction which will constitute its abandonment. Insubstantial, technical or infrequent violations which do not manifest an intent to subvert the original plan or scheme of development will not constitute an abandonment of the restrictions." *Gwatney*, 371 So.2d at 1361. In *Ritter v. Fabacher*, 517 So.2d 914, 916 (La.App. 3 Cir. 1987), quoting *Gwatney*, the court held that whether there has been acquiescence in a violation of a building restriction "sufficient to defeat its enforcement[,] depends on the circumstances of the case, including particularly the character, materiality and number of the alleged violations."

In this case the trial court stated, "It appears that the intent of the single family, residential-only provision, of these restrictions was to minimize neighborhood traffic and to encourage conformity." The Hijazis contend that Ms. Dentler's work as an artist has violated the building restrictions to such an extent that all the building restrictions should be abandoned. We do not agree.

The record reflects Ms. Dentler is a local artist with a home art studio in her approximately 13,000 square foot home in which she paints and also illustrates children's books. In addition, she owns the Gallery by the Lake, located at 106 Pryce Street, Lake Charles, Louisiana. The gallery opened in 1991 and is an approximately 8,000 square foot space in downtown Lake Charles. The gallery is in the Charlestown Cultural District, and any sales of original art from the gallery are sales tax free. Ms. Dentler is a widow, so due to security issues and the tax exemption enjoyed by the gallery, she sells and stores her paintings in her downtown gallery only.

Testimony at trial on the merits and in the motion for new trial indicated that Ms. Dentler does have an internet site that lists her home address and phone number. However, she encourages potential customers to visit her in the gallery. Almost all of the sales via the internet are to out of state buyers requiring no personal contact, as the art works are shipped directly to the purchaser.

Ms. Dentler did testify that she might have three or four potential buyers at her home in the period of a year, but there was no testimony at trial that any of her neighbors ever observed any commercial activities at Ms. Dentler home. With the small number of potential buyers, it would seem impossible for any neighbor to distinguish a potential buyer from a family member or friend.

In addition, although the Hijazis urge the presence of a "No Parking" sign in Ms. Dentler's driveway was due to the large amount of traffic at her home, the record contains no testimony to support this contention. In fact, the sign on her driveway reads: "Private Property No Trespassing No Parking[,]" and is hardly an invitation to shop at a commercial enterprise or to put any of the neighbors on

10

notice that Ms. Dentler might have been violating a building restriction by operating a commercial enterprise.

The record reflects that the majority of the February 22, 2012 hearing on the merits of the permanent injunction was devoted to the commercial activities of Ms. Dentler. The trial court, in its original ruling granting the permanent injunction, classified Ms. Dentler's business activities as a "hobby." However, in its ruling denying the Hijazis' motion for new trial, the trial court determined that there was "a business that's clearly being run out of Ms. Dentler's home." The trial court, in relying on *Gwatney,* further stated, "I don't find that this rises to the level of a violation that would under the law be considered that the other property owners have demonstrated an intent to abandon this provision[,]" i.e., a single family residential development.

The trial court in its ruling on the Hijazis' motion for new trial quoted extensively from *Gwatney*. In *Gwatney*, one of the residents was attempting to store various pieces of "street fair" equipment on a lot in a residential neighborhood. The other neighbors objected, and a panel of this circuit found that despite commercial activity in the neighborhood, which included the selling of real estate, shrimp, and tomato plants, the advertising of a concrete business with a home phone number, and the presence of a school bus on one property, these few violations did not manifest an intention to abandon the plan of development, considering the sales were periodic, and none of the parties relied on these sporadic sales for a living.

In comparing *Gwatney* to the case at issue, the trial court also focused on the sporadic nature of the sales of artwork by Ms. Dentler and her testimony that

she did not rely on the sale of her artwork for her livelihood. In addition, the trial court also found:

> It's clearly a business run out of her home, but I think the outward manifestation is the key from what I can tell under this *Gwatney* case. There has to be some outward manifestation of this business or the nonresidential activities taking place on theses lots.

> And because I don't find there is any appreciable outward manifestation of nonresidential activities taking place[,] I'm going to deny the Motion For New Trial.

The Hijazis' second assignment of error, based on the commercial business activities of Ms. Dentler, is without merit.

### The Garage Apartments

The Hijazis also urge in their second assignment of error that Ms. Dentler's art studio somehow violates the building restrictions. They argue that it somehow violates either restriction number one, requiring the homes constitute a single family residence, or restriction four, which allows garage apartments over the required minimum two car garage, with either family members or servants allowed to occupy the apartments. The neighborhood owners urge that this issue was raised for the first time on appeal and object.

It appears from the trial court's rulings that it, too, was unsure whether the issue of a garage apartment above the artist studio instead of over the four car garage was before the court. The trial court in its original ruling found that Ms. Dentler indeed did have two garage apartments occupied by her "hired help," as allowed by building restriction number four. In addition, the trial court correctly found the "living quarters or servant['s] quarters" were exempted from the single family requirement.

In the ruling on the motion for new trial, the trial court addressed the apartment issue in further detail:

> The only other restriction that appeared to this Court that may have been violated, based on Ms. Dentler's testimony, that no one has really argued to speak of, is that the building restrictions indicate that it's supposed to be a single family residential, except it makes an exception for garage apartments where you can have servant quarters or family members living there.

> Ms. Dentler testified she has, apparently, two apartments. One above the garage and then one above the art studio where she has her servant's quarters.

> And because there has not been any definitive testimony as far as where the location of the art studio in relation to the garage, whether the one above the art studio could be considered a garage apartment or not--which would violate the single family residence provision.

> . . . .

> And I don't find that there is enough evidence with regard to the multifamily use with regard to the garage apartment issue and whether the apartment over her art studio would be considered another violation. I don't think there is enough evidence on that to really make a determination whether that's a violation.

The trial court correctly found the record did not contain the necessary testimony for a determination of the issue of whether the apartment over the art studio was in a different location than the garage apartment. Restriction four does use the term "garage apartments," plural, thus contemplating more than one apartment. The Hijazis' assignment of error on this issue is without merit.

## DISPOSITION

For the forgoing reasons, we affirm the judgment of the trial court finding the recorded building restrictions to be in full force and effect, enforceable, and not abandoned. We affirm the trial court judgment making permanent the preliminary injunction issued on April 21, 2012, in favor of the defendants/plaintiffs-in-

reconvention, Anne Schaefer Dentler, Bradley Nelson, Karen Nelson, Timothy O'Dowd and Maria O'Dowd and intervenor Worth Scott Moffett, requiring defendants-in-reconvention Fouad Hijazi and Rimi Elsabeth Hijazi to cease activities in contravention of such building restrictions and to remove any construction violating the building restrictions. All costs of this appeal are assessed against plaintiffs/defendants-in-reconvention, Fouad Hijazi and Rimi Elsabeth Hijazi.

**AFFIRMED.**